FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 DEC 23 PM 3: 40

U.S. DISTRICT COURT
N.D. OF ALABAMA

VALINDA F. OLADEINDE, ET AL.,      )
                                   )
        Plaintiffs                 )        CIVIL ACTION NO.
                                   )
VS.                                )        91-AR-0196-S
                                   )
CITY OF BIRMINGHAM, ET AL.,        )
                                   )
        Defendants                 )
                                   )

ENTERED

DEC 2 3 1997

## MEMORANDUM OPINION

The court has before it a motion for summary judgment recently
filed in the above-entitled ancient case by defendant, City of
Birmingham ("City").    The court has not bothered to count the
various predecessor Rule 12(b)(6) and Rule 56 motions, or the
number of prior appeals by various defendants in this case, all of
whom have always insisted, for one reason or another, that they
cannot possibly be liable to plaintiffs, Valinda Oladeinde, who is
a police officer of the City, and Patricia Fields, a former City
police officer.    They may be right, of course.  This court has
figuratively written its hand off telling the factual and
procedural history of this case, and the Eleventh Circuit has
likewise spent a lot of its time on the case since 1991 when it was
first filed in this court.

The thrust of the new Rule 56 motion is the City's contention
that the law surrounding 42 U.S.C. § 1983 dramatically changed in

1

1997 by virtue of one decision by the Supreme Court and one decision by the Eleventh Circuit, both handed down after this case was last dealt with by this court.   The City cites *Board of Com'rs of Bryan County, Okla. v. Brown*, 117 S. Ct. 1382 (1997), and *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 1997).   Both of these cases do stand for propositions of law the City has never articulated before in this case, unless implicitly.

Before discussing the possible effects of these two cases on cases filed <u>after</u> they were decided, this court points out that the Oladeinde case was filed in 1991, and that the City has had every opportunity long before now to interpose expressly the defenses it now would interpose.   If it had done earlier what it does now, the Eleventh Circuit and the Supreme Court would have had much earlier opportunities to say what they respectively have said in *Bryan County* and in *Scala*, neither of which purported to overrule prior precedent of the speaking courts, but which instead claimed to represent the law as the law was throughout 1991, 1992, 1993, 1994, 1995, 1996 and 1997.   And 1998 is just around the corner.   The mere fact that there have been interim appellate expressions elaborating the law of municipal liability in § 1983 cases does not mean that the City should be allowed to file a new dispositive motion, especially without first having obtained leave to amend its answer, expressly to introduce newly discovered alleged absolute defenses. If it can do what it proposes to do because of an interim appellate nuance, a case can go on forever, so long as a determined lawyer

2

keeps reading the advance sheets.  This court reads something new in the voluminous appellate literature every week, and assumes that the Eleventh Circuit does too.  What will a court say next week to encourage a party in this case to change course?

Assuming *arguendo* that the City can continue indefinitely to plead new alleged absolute defenses based on decisions written after the earlier rulings of the trial court, and after appeals from those rulings in which the new matters could have been raised, the court does not find either *Bryan County* or *Scala* persuasive as new or old defenses for the City in this case.

*Bryan County*, like *Morro v. City of Birmingham*,  117 F.3d 508(11th Cir. 1997), which was decided after *Bryan County*, recognizes that Chief Deutcsh's decisionmaking on behalf of the City could create § 1983 liability under *Monell, Pembaur* and *Praprotnik*, that is, unless the *Scala* idea interrupts.  It is clear that the City's "state of mind" is formed by its human decisionmakers.  If defendants Deutcsh, Walker and Webb (high level police officers) were assigned roles for the City as its designated (either expressly or impliedly) disciplinarians for dealing with whistle-blowing police officers, then *Pembaur* and *Praprotnik* are the controlling cases, that is, unless they have been done away with by *Bryan County*.  If *Pembaur* and *Praprotnik* still have viability, then the state of mind of Deutcsh, Walker and Webb, if that state of mind contains an element of intent to punish plaintiffs for their activities in concert with a federal

3

investigation of the City Hall, can establish the requisite municipal intent to interfere with plaintiffs' First Amendment rights to express themselves in matters of general public concern, and therefore that the duty transfers and other alleged hassling acts would constitute actionable events under § 1983. *Bryan County* does not help the City. The key words in *Bryan County* are:

> [P]roof that a municipality's legislative body <u>or authorized decisionmaker</u> has <u>intentionally</u> deprived a plaintiff of a federally protected right <u>necessarily establishes that the municipality acted culpably</u>. Similarly, <u>the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains</u>.

117 S. Ct. at 1389. This court believes that the above quoted passage, while hard to reconcile with some other things said by the majority in *Bryan County*, was necessary in order for the author, Justice O'Connor, to obtain the bare majority she succeeded in obtaining.

If the City can take advantage of whatever mileage there is in interim decisions on § 1983 municipal liability at this late juncture, the court finds less mileage for the City in *Scala* than in *Bryan County*. First, *Scala* involved a personnel board affiliated with, or an actual agency of, or an integral part of, the City of Winter Park itself. Therefore, the board logically constituted the ultimate decisionmaker for Winter Park within its sphere of responsibility. On the other hand, the Personnel Board of Jefferson County, Alabama, like the Circuit Court of Jefferson

4

County, is a tribunal that serves a broader constituency, and, as
a reviewing body, is not an agency of or an affiliate of the City
of Birmingham.  What the Eleventh Circuit said in *Morro v. City of
Birmingham*, 117 F.3d 508 (11th Cir. 1997), about the applicability
of *Scala* to the City of Birmingham, was unnecessary to its
decision, except, perhaps, as preface.  More interesting is the
fact that the Eleventh Circuit would have had no occasion to
discuss *Scala* in *Morro* if *Bryan County* had been thought to have
eliminated *Pembaur* and *Praprotnik*, or had made those two seminal
variations in the *Monell* theme into mere skeletons of their former
selves.  If the Personnel Board of Jefferson County, an entity
totally distinct from the City of Birmingham, violated the
constitutional rights of a City employee, it, the Personnel Board
itself, could certainly be found liable under § 1983, inasmuch as
it would be acting under color of state law; but the City itself
could not be sued for such a constitutional shortcoming by the
Personnel Board, a body with which the City may disagree, and often
does.  It is inconceivable, for instance, to think that the City
could be liable under § 1983 for the failure of the Personnel Board
to provide for the procedural due process guaranteed by the
Fourteenth Amendment when the City has nothing to do with
legislating or implementing that process.  In other words, the
Personnel Board of Jefferson County cannot, either practically or
legally, be  the ultimate decisionmaker for the City of Birmingham.
Second, assuming *arguendo*, that *Scala*, as ostensibly expanded by

5

*Morro*, speaks to the possibility of making the Personnel Board of Jefferson County the ultimate decider, a la *Pembaur*, on matters of discipline in the City's police department, the Personnel Board is, by statute, strictly limited in its role in that regard. This court has read all of the statutes, and all of the amendments thereto, by which the Personnel Board of Jefferson County was created and molded into what it is today. The Eleventh Circuit is entirely correct in *Morro* when it says:

> Those materials [excerpts from the Enabling Act of the Personnel Board of Jefferson County, 145 Ala. Acts 248 (as amended)] seem to make final decisionmaking authority on <u>dismissals, demotions and suspensions</u> out of the Chief's hands.

(emphasis supplied). Plaintiffs in the instant case claim that they were transferred and otherwise harassed. They do not assert that they were "discharged," "demoted" or "suspended." Therefore, they would have had no Personnel Board remedy, meaning that *Scala* cannot be applied to their cases, because if there is <u>no</u> appellate remedy before the Personnel Board, it cannot be argued that there was a "meaningful administrative review." Thus, a clear requirement of *Scala* cannot be met for avoiding the effect of a constitutionally defective decision by the municipality's authorized officials short of a personnel board.

### Conclusion

Based on the foregoing, the court will deny the City's motion for summary judgment. Nevertheless, the court suggests that plaintiffs give serious thought to dismissing their action as

6

against the City while maintaining their action against the individual police officials who are not immune from the imposition of punitive damages under § 1983, as is the City. The special jury interrogatories necessary to permit a distinction between the City and the individuals will be confusing at best if plaintiffs proceed against the City. And to let the City go does not necessarily mean that the City will not pay any judgments entered against Deutcsh and/or Walker and/or Webb. It does mean that the difficult legal issues arising from *Monell* and its progeny would be obviated.

DONE this __23rd__ day of December, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

7