IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

98 JUL 29 PM 4: 40

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| VALINDA F. OLADEINDE, | ) |
| | ) |
|     Plaintiff and | ) |
|     Counterclaim defendant | ) |
| | ) |
| PATRICIA FIELDS, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| VS. | ) |
| | ) |
| CITY OF BIRMINGHAM | ) |
| | ) |
|     Defendant and | ) |
|     Counterclaimant | ) |
| | ) |
| ARTHUR DEUTCSH, | ) |
| | ) |
|     Defendant | ) |
| | ) |
| JULIUS WALKER, | ) |
| | ) |
|     Defendant | ) |

CIVIL ACTION NO.

91-AR-0196-S

ENTERED

JUL 2 9 1998

## MEMORANDUM OPINION

This case has been pending for seven years.  It temporarily
ended on July 8, 1998, with an order entered on a jury's answers to
special interrogatories and verdict after a two-week trial.  The
case has been subject to Eleventh Circuit scrutiny, in some fashion,
on at least seven occasions:

> *Oladeinde v. City of Birmingham*, Nos. 91-2061 and 91-2063.
> May 8, 1991, denying permission to appeal and denying
> mandamus petition;

> *Oladeinde v. City of Birmingham*, No. 91-7530, July 29, 1991,
> denying mandamus petition;

1

396

*Oladeinde v. City of Birmingham*, 963 F.2d 1481 (11th Cir.
1992), *cert. denied*, 507 U.S. 987, 113 S. Ct. 1586
(1993);

*Oladeinde v. City of Birmingham*, 978 F.2d 719 (11th Cir.
1992);

*Oladeinde v. City of Birmingham*, 38 F.3d 573 (11th Cir. 1994);

*Oladeinde v. City of Birmingham*, 89 F.3d 855 (11th Cir. 1996);

*Oladeinde v. City of Birmingham*, 104 F.3d 373 (11th Cir.
1996).

Before the case makes its next visit to the Eleventh Circuit or to
the Supreme Court, this court must address the myriad issues
presented by the blizzard of post-judgment papers that have appeared
since July 8, 1998.    It is impossible to write a coherent and
comprehensive opinion without outlining briefly the various new
requests by the various parties.  The court will list those requests
chronologically by filing date.

### The Post-trial Requests Thus Far

1.    Motion filed on July 8, 1998, by plaintiff, Valinda
Oladeinde ("Oladeinde") for declaratory and injunctive relief
against defendants, City of Birmingham ("City") and Julius Walker
("Walker").

2.    Motion filed on July 10, 1998, by defendants, City and
R. L. Webb ("Webb"), for the taxation of their costs against both
plaintiffs, Oladeinde and Patricia Fields ("Fields").

3.    Motion filed on July 13, 1998, by defendant, Arthur
Deutcsh ("Deutcsh"), seeking to vacate the order of July 8, 1998,

2

insofar as it may tax costs against him in favor of Fields.

4.   Renewed motion filed on July 14, 1998, by defendants, Deutcsh and Walker, for judgment as a matter of law or in the alternative for a new trial.

5.   Response filed by City on July 15, 1998, to Oladeinde's motion described in paragraph 1 above.

6.   Reply filed by Oladeinde on July 16, 1998, to City's response to her claim for equitable relief in the form of a promotion from sergeant to lieutenant.

7.   Response filed by Deutcsh and Walker on July 16, 1998, to Oladeinde's claim for equitable relief.

8.   Motion filed by former defendant, Richard Arrington ("Arrington"), on July 16, 1998, to tax his costs against plaintiffs.

9.   Motion filed on July 17, 1998, by Oladeinde and Fields for judgment notwithstanding the verdict insofar as City is concerned, or in the alternative for a new trial as against City.       1 0 .

Motion filed on July 17, 1998, by Oladeinde and Fields for discovery in aid of execution on their judgments against Deutcsh and Walker, seeking, in particular, the extent of any indemnity by City.

11.   Defendants' response filed on July 21, 1998, to plaintiffs' motion described in paragraph 10 above.

12.   Oladeinde's supplemental argument submitted on July 21, 1998, in support of her claim for equitable relief.

13.  Plaintiffs' amended motion filed on July 21, 1998, for discovery and for a delay in ruling on Deutcsh's motion for judgment notwithstanding the verdict.

14.  Motion by Oladeinde filed on July 21, 1998, for vacation of the judgment against her and in favor of City on its counterclaim.

15.  Court-invited motion by Frank M. Bainbridge ("Bainbridge") filed on July 22, 1998, requesting payment as costs for his services to the court in investigating the competency of Deutcsh.

16.  Reply filed by City on July 24, 1998, to plaintiffs' various post-trial motions.

17.  Defendants' opposition filed on July 24, 1998, to plaintiffs' amended motion for discovery.

18.  Motion by Deutcsh and Walker filed on July 24, 1998, for a stay of execution on plaintiffs' collection efforts pending resolution of post-trial motions.

19.  Plaintiffs' motion filed on July 24, 1998, for an extension of the time within which to oppose Deutcsh's and Walker's motion to set aside the verdicts against them.

20.  Plaintiffs' motion filed on July 27, 1998, seeking leave to amend their complaint to seek declaratory relief against the City.

21.  Defendants' opposition filed on July 27, 1998, to plaintiffs' motion for an extension described in paragraph 19 above.

4

22.   Plaintiffs' so-called "clarification" filed July 28, 1998, to verify that they have not abandoned their motion for a new trial as described in paragraph 9 above.

23.   Opposition filed July 28, 1998, by plaintiffs to renewed motion for judgment as a matter of law or in the alternative for a new trial filed by Deutcsh and Walker.

In all probability, other motions will be filed before this opinion can be completed.   Therefore, the court will move with all deliberate speed, hoping to head off an environmental disaster as the parties to this action continue to gobble up the world's timber resources.

### The Procedural Posture of the Case

The jury decided that plaintiffs failed to prove by a preponderance of the evidence that defendant Webb violated 42 U.S.C. § 1983 as to either plaintiff.   Therefore, the court will spend no time discussing the evidence as it bears on plaintiffs' claims against Webb.

The jury decided that Deutcsh violated Oladeinde's free speech rights protected by § 1983 by failing to promote her from sergeant to lieutenant.   The jury also assessed damages against Deutcsh and for Oladeinde in the amount of the difference between Oladeinde's income as sergeant and the income she would have earned as lieutenant from the time Deutcsh refused to promote her.   The

5

judgment entered on this jury verdict will require exploration and comment.

The jury decided that Walker violated the free speech rights of both Oladeinde and Fields and entered verdicts in sums which the jury considered reflective of the emotional harm suffered by Oladeinde and Fields at the hands of Walker. The judgments entered on these two verdicts will call for little, but some, further comment.

The jury found that plaintiffs failed to prove that the City, as a separate entity, was responsible under either a *Monell* theory or a *Praprotnik* theory for what the jury had found to be violations of § 1983 by individuals. This finding calls for a post-judgment examination as to the effect, if any, of this finding on Oladeinde's request for equitable relief against City. The court will not second guess the jury's finding that the City was not liable for money damages.

On a bifurcated consideration of plaintiffs' requests for punitive damages against Deutcsh and Walker, the jury declined to enter punitive verdicts. In the court's opinion, these findings are invulnerable.

Finally, the jury found that the City proved that Oladeinde owed it the monies provided by City for her use as a narcotics team leader in making "buys" and paying "informers" and for which she was unable to account.

6

Deutcsh attended the entire lengthy trial, and he testified. He claimed that he did not remember any of the events described by the other witnesses and that he did not even know why he was in court; however, this court expressly finds that whatever party or parties had the burden of proving that Deutcsh was not competent for the purposes of his remaining a defendant in a civil proceeding, _if anybody had such a burden_, failed to meet it. The fact that Mr. Bainbridge's considerable efforts, which were ordered by the court at the express suggestion of Deutcsh's counsel, could not establish a lack of competency sufficient to insulate Deutcsh from being a party to a civil proceeding, together with the estoppel resulting from Deutcsh's continued appearances both in this court and in the Eleventh Circuit by and through competent counsel where he enjoyed the adjudicative effect both of this court and of the Eleventh Circuit, only confirms this court's independent conclusion that Deutcsh was and is competent for the purpose of this civil trial in which he was a defendant.

### Claim by Frank M. Bainbridge

Until the questions of who gets what from whom are finally decided, the final taxation of costs in this case is an impossible task. That task will be undertaken as the last item in this opinion and the order which will accompany it. However, it is now possible and appropriate to tax as part of those costs a reasonable fee and expenses for Mr. Bainbridge, who responded to the court's formal

7

request that he itemize his expenses, lawyer-hours and provide proof
of his regular hourly rate.   Mr. Bainbridge has filed a verified
motion providing the information sought. Interestingly, despite the
flurry of motions and objections as to all other issues, no party
has filed an objection to an award of fees and expenses to Mr.
Bainbridge as part of the costs taxable pursuant to 28 U.S.C. §
1920(6).

Based on a simple lodestar analysis, and being personally
familiar with the daunting task assigned to Mr. Bainbridge and the
high quality of his performance of that task, the court approves Mr.
Bainbridge's reasonable request in the sum of $19,984.09, which,
pursuant to the discretion provided by Rule 54(d)(1), F.R.Civ.P.,
will be taxed as costs against defendants, Deutcsh and City, who
were both represented by the same counsel in what otherwise have
been a much greater conflict-of-interest had not the City suggested
its willingness to pay for a temporary and/or permanent guardian ad
litem for Deutcsh.   In the event of an appeal of the taxation of
these particular costs, the court will supplement the record with
the *in camera* report provided to the court by Mr. Bainbridge and
referred to in an earlier opinion of the court.

## The Two Verdicts Against Walker

Walker's renewed motion for judgment as a matter of law
requires the court to examine both the applicable law and the

8

evidence, including all logical inferences upon which a fair-minded jury could have reached the separate verdicts it reached in favor of Oladeinde and Fields and against Walker. Both plaintiffs testified believably that they suffered emotional distress and humiliation as a proximate consequence of Walker's actions as their superior. What evidence did the jury have upon which to find Walker in violation of § 1983? There was more than one piece of evidence to suggest that actions by Walker under color of law adversely impacted upon plaintiffs' freedom of expression.

A. The big ticket item, of course, was the derringer incident which Walker necessarily admitted to be a grave mistake of judgment on his part, but which, as interpreted by Oladeinde and Fields, and apparently by the jury, was a terrifying experience for two subordinate officers and a cool and calculated effort at intimidation by Walker. The two plaintiffs went to Walker for permission to go to the local state prosecuting attorney with information about the personal involvement of Deutcsh, the City's police chief, in tampering with the jail records of Erica Arrington, the Mayor's daughter. Deutcsh was later indicted and convicted of tampering with Erica Arrington's jail records. According to both plaintiffs, Walker shouted, slammed his fist on the desk, and laid a non-regulation derringer on the desk with two bullets standing beside it. In closing argument, Walker's own counsel had this to say about the incident: "By the standards of everyone here it was a

9

classic example of bad taste."  What counsel said may have been a classic understatement.  The interpretation put on the incident by the jury was undoubtedly one of intimidation and not of a paranoid reaction by Oladeinde and Fields to a bad joke.

B.    An action by Walker that arguably was more traumatic for Oladeinde than the derringer incident was Walker's testimony in the Ricky Germany drug prosecution case, where Walker testified in the state court that he would not believe Oladeinde under oath.  As his counsel pointed out, Walker was subpoenaed by Ricky Germany and did not "voluntarily" appear.  But everyone  with a smattering of life experience, including these jurors, knows that a witness is not subpoenaed by a lawyer without that lawyer's knowledge of what testimony he can expect from that witness.  Inferentially, Walker was Ricky Germany's hoped-for ace-in-the-hole, inasmuch as Oladeinde was the central prosecution witness against Germany.  It must have been a blow to Walker's ego when Germany was convicted.  A fact probably not missed by the Oladeinde jury was that the Germany jury believed Oladeinde "beyond a reasonable doubt and to a moral certainty" (the criminal burden of proof in Alabama), and therefore flatly rejected Walker's testimony to the contrary.  Nothing could be more deliberately cruel, especially if improperly motivated, than for the supervisor of a police officer to testify that his subordinate is unworthy of belief.  The Oladeinde jury refused to award punitive damages to Oladeinde against Walker.  Perhaps the

10

jury thought Walker had been punished enough by what the Ricky Germany jury did.

Interestingly, this court takes judicial notice of the fact that the City offered Oladeinde as its central witness in this very court within the last year. In *Alghanee v. City of Birmingham,* CV 96-AR-109-S, Walker was conspicuously absent as a witness to challenge Oladeinde's veracity. Plaintiffs in *Alghanee*, all black, who there lost their civil rights case before a jury, could surely have used a high-level black City police official like Walker to express his belief that Oladeinde is unworthy of belief.

C.   Walker's counsel understandably admitted in closing argument: "Again, we don't dispute the fact, and Captain Walker admitted during his testimony, he wanted to transfer Sgt. Oladeinde." Of course, counsel went on to provide several explanations for Oladeinde's transfer from narcotics to patrol, other than that Oladeinde was a "whistle blower" and had divided her loyalty between the City Hall and the multi-jurisdictional Drug Task Force, which was led by the United States Attorney for the Northern District of Alabama, and which seemed to be poking its nose into affairs at City Hall. If Walker was motivated in his desire to transfer Oladeinde (and she was, in fact, transferred off of the Drug Task Force) and arguably participated in the decision to transfer her as a punitive measure in order to shut her up, Walker was clearly trespassing on Oladeinde's First Amendment rights.

11

D.   Although it is impossible to know the effect on the jury, there were two subtle, but telling, incidents involving Walker and Oladeinde.   Walker commanded Oladeinde to meet him and Donald Watkins, special counsel to Arrington, at a precinct headquarters. This incident came shortly after the derringer incident, during the investigation that led to the indictment of Deutcsh for tampering with jail records, and after plaintiffs refused to reveal to Walker the name of a confidential informant who they said had told them that she had witnessed criminal activity by City officials at the Civic Center.   Contemporaneously, Joseph Whatley, co-counsel with Donald Watkins, appeared at the federal courthouse to interview Oladeinde while she was there as a witness.   Whatley followed up with a seemingly innocuous letter to Oladeinde offering his assistance in taking her to the state prosecutor.   Although both Watkins and Whatley were civil and polite in their approaches, their mere appearances under the overall circumstances were subject to the construction that plaintiffs apparently placed upon them.   While entirely innocent interpretations are possible, if not probable, when a jury verdict is under attack, as it is here, the litigant who obtained a favorable jury verdict must be given the benefit of any interpretation of the evidence that may have influenced that verdict.

E.   The court may have missed some of the other evidence, or nuances from that evidence, respecting Walker's liability under

12

§ 1983.  In the aggregate, however, there was gracious plenty of evidence to demonstrate that Walker consciously intended to quiet Oladeinde and Fields and that he undertook to accomplish that purpose in ways causing plaintiffs physic damage, by frightening them, and by embarrassing them.  It would not be beyond reason for the jury to have concluded that Walker contributed to Deutcsh's decision to deny a promotion to Oladeinde, although the jury apparently was not willing to make such a leap of logic, inasmuch as it did not award Oladeinde any lost wages against Walker.

### The Verdict Against Deutcsh

There are several relevant pieces of evidence supporting the verdict in favor of Oladeinde and against Deutcsh arising out of Deutcsh's failure to promote Oladeinde to lieutenant.

A.   Oladeinde has a master's degree, has a long and exemplary record as a Birmingham police officer, was promoted fairly early in her career to sergeant, and would not have been loaned to the Drug Task Force had she not been deemed competent, brave, intelligent, and trustworthy.  Her ratings have routinely been "excellent."  She has been constantly and often certified by the Jefferson County Personnel Board on its list of eligibles when the City sought prospects for the position of lieutenant in the Police Department.  In fact, she never applied for a lieutenancy without passing the written test and without being among those certified by the Personnel Board.

13

B.    It is an entirely permissible inference that Deutcsh knew
of plaintiffs' visit to Walker that occasioned the display of the
derringer.   That visit, it will be recalled, was to make a request,
which was turned down vehemently by Walker, that plaintiffs be
allowed to take what information they had about the jail records
matter to the state's prosecuting attorney for possible use in the
case that ultimately resulted in Deutcsh's conviction.    Giving
Oladeinde the benefit of such inference, what did Deutcsh do in
response?  First, according to Walker's counsel in closing argument:
"Chief Deutcsh has made it very clear, Oladeinde will not remain in
Vice and Narcotics."    (Emphasis  supplied).    It was Deutcsh's
ultimate decision, then, that Oladeinde be transferred to patrol.
If Deutcsh's motivation was pure, the jury failed to believe it.
Deutcsh's counsel argued, in effect, that Deutcsh went to a meeting
of the Drug Task Force personnel to mend fences after the United
States Attorney's office complained that Oladeinde was being kept
occupied at the City Hall with repeated polygraph examinations at a
time when she was badly needed by U. S. attorneys to prepare her as
a witness in an upcoming important federal drug prosecution.  No one
can know for sure what the jury thought on this particular subject.
The only thing known for sure is that the jury found Deutcsh
motivated  to  deny  Oladeinde  a  promotion  by  constitutionally
impermissible considerations.

C.    It is legitimately arguable that Deutcsh participated in

14

the decisions to send Watkins and Whatley to interview Oladeinde. After all, Deutcsh was the Chief of Police. Would Walker have sent Watkins and Whatley without first consulting with then-Chief Deutcsh? The jury could have made a connection with Deutcsh as well as with Walker.

D. More important than the arguably punitive transfer of Oladeinde out of narcotics, the devastating finding of the jury came as a result of the undisputed fact that Deutcsh said, "Scratch her," when Oladeinde appeared on the Personnel Board's certification of eligibles for promotion to lieutenant. Deutcsh did not permit one word of discussion by the review committee regarding Oladeinde's qualifications. His counsel argued that Deutcsh's reason for denying Oladeinde a promotion was her inability to account for cash that her group used for making drug buys and paying informants, although Oladeinde herself had initiated the inquiry into the whereabouts of those funds by seeking accounting help with what was and is a perennial problem in drug enforcement procedure; and although no public official in the City had ever been sued by the City for an accounting for such funds, that is, until the City's counterclaim against Oladeinde was filed in this case. It is significant that Deutcsh's quick and harsh words, "Scratch her," were recalled by more than one witness and were uncontradicted. The jury had the right to believe that Deutcsh was not telling the truth when he said he remembered nothing about his tenure at City Hall

15

except that he had been the Chief of Police.  The jury could have found that a person who regularly drives an automobile and takes an oath to tell the truth cannot be totally devoid of memory.  A civil jury is designed for the very purpose of determining truth, that is, unless the Seventh Amendment has lost its meaning.  In a jury case the judge does not decide issues of fact.  Deciding the facts is the function of the jury.  It was well within the realm of reason for this jury to have found a causal connection between Deutcsh's decision to deny Oladeinde a promotion and Oladeinde's attempt to speak out on matters of pressing public concern.

### The Verdicts in Favor of the City of Birmingham

The *Monell* and *Praprotnik* avenues to liability against a municipality under § 1983 are hard roads to travel, although, in this case, there was sufficient evidence upon which the jury <u>could have</u> found the City liable.  But again, it is not what the jury "<u>could have</u>" done but what it "<u>did</u>" that controls.  This jury found that the City neither delegated to Walker and/or Deutcsh the authority to do what these plaintiffs claimed constituted violations of § 1983, nor that it had official policies to permit or encourage those violations.  *Monell* and *Praprotnik* present esoteric and difficult concepts for a jury to digest and to apply.  The jury did a good job in this case.

Deutcsh and the City argue that it is irreconcilably inconsistent for the jury to have found Deutcsh, as Chief, liable

16

for failing to promote Oladeinde when Deutcsh was not the final promoting authority and, instead, the promoting decision rested with the Mayor.   This argument provokes several questions that bear on Oladeinde's prayer for equitable relief in the form of instatement as a lieutenant.

Oladeinde's prayer for an injunction against Walker to forbid any further harassment is an entirely separate matter.   This court does not relish the prospect of monitoring every future act by Walker that might adversely impact on Oladeinde, although it is conceivable that his future actions vis-a-vis Oladeinde might be hangovers from the events described in this case, even in reprisal for the personal judgment that Oladeinde has obtained against him. The court will not pre-judge Walker's future actions and, therefore, will respectfully decline to enjoin Walker from harassing Oladeinde. This does not mean, of course, that any such harassment, if it should occur, cannot form the basis for separate appropriate administrative or judicial relief.

The more difficult question is whether to extend the jury's finding that Deutcsh denied Oladeinde a promotion into an order that City must now promote her.   To enter such an order will be to order a municipality that has been found to have no liability to Oladeinde for money damages to take action to prevent Oladeinde future damage of the same kind.   The problem is exacerbated by two interesting and conflicting items.   In the only opinion it has written in *Oladeinde*,

17

the Eleventh Circuit found as follows:

> Nowhere do plaintiffs allege particular wrongful acts by Mayor
> Arrington and nowhere do plaintiffs allege a sufficient causal
> connection between the alleged free-speech violation and the Mayor's
> conduct.

*Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1486 (11th Cir.

1992).

The Eleventh Circuit continued:

> Plaintiffs came closest to alleging the Mayor's involvement when
> plaintiffs made the following statements in their complaint: "As a
> result of plaintiffs' [whistleblowing], defendants Webb, Walker,
> Deutsch [sic] and Arrington took certain actions in an effort to
> punish, harass, and intimidate such 'whistleblowers ....'"
> Plaintiffs' Amended Complaint at 7, para. 20, and "Defendants
> illegally conspired to violate plaintiffs' rights ...." Id. at 18,
> para. 43. In the light of the heightened specificity requirements
> for Rule 8 in section 1983 cases, we look for definiteness in the
> averment of wrongful acts. These vague allegations, which are
> supported by no specific factual allegations against the Mayor,
> constitute no basis for a section 1983 cause of action. The
> district court, therefore, should have dismissed the claims against
> the Mayor.

*Id.*

After the remand that accompanied the above quotations, this

court on April 30, 1993, held:

> Both plaintiffs and defendants in the above-entitled cause
> have responded to the invitation issued by this court on March 10,
> 1993, to inform the court what they think is the effect, if any, of
> *Leatherman v. Tarrant County*, ___ U.S. ___, ___ S.Ct. ___, 1993 WL
> 52174 (1993), on *Oladeinde v. City of Birmingham,* 963 F.2d 1481
> (11th Cir. 1992). The court was not surprised and should not have
> been surprised by the 180-degree difference between what plaintiffs
> and defendants have said in response. There is an obvious conflict
> both between the parties and between the law-of-the-case arising
> from the Eleventh Circuit's mandate and subsequent Supreme Court
> precedent.

\*     \*     \*

18

The Chief Judge of the Eleventh Circuit, as recently as March 23, 1993, recognized that "intervening changes in the law may make a decision obsolete." Dissent from denial on rehearing *en banc* in *Cable Holdings of Georgia v. McNeil Real Estate*, slip op. p. 1609, n. 19 (citing *Lufkin v. McCallum*, 956 F.2d 1104, 1007 (11th Cir. 1992), a case with which this court is intimately familiar). In *United States v. Giltner*, 972 F.2d 1563, 1566 (11th Cir. 1992), the Eleventh Circuit had previously recognized this concept of Supreme Court jurisprudential override. If this principle, so recently repeated by Chief Judge Tjoflat, has any meaning, *Leatherman* has rendered at least parts of *Oladeinde* obsolete, because to a considerable extent *Oladeinde* was premised upon the Eleventh Circuit's then belief, clearly repudiated in *Leatherman*, that actions brought under 42 U.S.C. § 1983 against municipalities and their agents require a heightened pleading standard. *Leatherman* was both unanimous and unambiguous. Insofar as *Oladeinde* is dependent on the existence of a heightened pleading standard for plaintiffs, it must be by-passed by this court and *Leatherman* followed instead. *Oladeinde* cannot constitute the law-of-the-case binding the trial court where it conflicts with a subsequent clear expression by the Supreme Court.

\*     \*     \*

In *Oladeinde*, the Eleventh Circuit also ordered the dismissal of the entire action as against one defendant, Mayor Richard Arrington. Thereafter, on Pearl Harbor Day, 1992, pursuant to the mandate, this court ordered the action dismissed as against Arrington. No motion has thereafter been filed by plaintiffs seeking a vacation of the said order of dismissal, and that order has become final as the law-of-the-case. Arrington's counterclaim, not mentioned in the Eleventh Circuit opinion, must also fall. The word "counterclaimant" presupposes that the person so described be a "defendant." Inasmuch as Arrington is no longer a defendant, he cannot be a counterclaimant. His counterclaim, if not mooted by his elimination as a defendant, is hereby DISMISSED with prejudice.

\*     \*     \*

In a footnote the Eleventh Circuit deemed "abandoned those motion-to-dismiss arguments that defendants advance in the district court but failed to raise on appeal." *Id.* at 1484, n. 2. Because the only avenue for the interlocutory review was the automatic appeal from this court's denial of the qualified immunity defense interposed by those defendants sued as individuals, this court is not sure what this footnote means with respect to any defenses raised by the City of Birmingham, but the court will give the footnote as literal a construction as possible and will apply it as

the law-of-the-case inasmuch as *Leatherman* is not there implicated.

*Oladeinde v. City of Birmingham*, CV 91-AR-196-S, Memo. Op. at 1-5 (N.D. Ala. Apr. 30, 1993).

Former defendant Arrington was lucky to have escaped in 1993, making it difficult, if not impossible, for Deutcsh to claim that Arrington was the final decisionmaker on matters affecting Oladeinde.

It is obvious from this court's 1992 opinion that it was endeavoring to reconcile both this court's previous orders and the appellate court's order. It is now six years later. Between April 30, 1993, and today, the Eleventh Circuit has said nothing instructive in this case. This court must look to what was said in this case in 1992 and in other cases since that time.

### Do Walker and/or Deutcsh Enjoy Qualified Immunity?

There has been some evolution within the Eleventh Circuit with respect to the concept of qualified immunity since *Oladeinde v. City of Birmingham*, 963 F.2d 1481 (11th Cir. 1992), but the general rule as announced in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982), has not materially varied since 1982. One constantly repeated principle is that the question of qualified immunity should be determined at the earliest possible stage of a case in order to protect individual defendants from non-meritorious suits. Only defendant Arrington escaped early in this case. How the other three individuals managed, at least in theory, to preserve qualified immunity defenses for seven years is a mystery, but that mystery

20

will be solved *infra*. The constants for qualified immunity were recently repeated in *Crawford-El v. Britton*, __ U.S. __, 118 S. Ct. 1584 (1998), in which on May 4, 1998, the Supreme Court said:

> Even when the general rule has <u>long been clearly established</u> (<u>for instance, the First Amendment bars retaliation for protected speech</u>), the substantive legal doctrine on which the plaintiff relies may facilitate summary judgment in two different ways. First, there may be doubt as to the illegality of the defendant's particular conduct (for instance, whether a plaintiff's speech was on a matter of public concern). See generally *Anderson v. Creighton*, 483 U.S. 635, 640-641, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987). Second, at least with certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation--there must also be evidence of causation. Accordingly, when a public employee shows that protected speech was a "motivating factor" in an adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct. *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977).

*Crawford-El*, 118 S. Ct. at 1594 (emphasis supplied).

It is clear, then, from *Crawford-El,* if it is not already clear, that "... retaliation for protected speech ... has long been clearly established" as a "no no." The core question for determining qualified immunity in the instant case has thus been answered. The jury rejected Walker's and Deutcsh's *Mt. Healthy* defense and found that they were both motivated by the desire to retaliate. Furthermore, the jury found that defendants' actions caused plaintiffs injury. This leaves only the question of whether plaintiffs' speech was "protected."

Interestingly, the Eleventh Circuit already has answered this question, too, and answered it <u>in this case</u>. It has established the law-of-the-case on the subject. The Eleventh Circuit, in its first

21

and only published opinion in this case, held:

> Plaintiffs, however, have successfully stated a free-speech claim for which relief might be granted. Bearing in mind that all facts alleged in the complaint and all reasonable inferences drawn from those facts must be taken as true on a motion to dismiss, see, e.g., *Stephens*, 901 F.2d at 1573, plaintiffs have alleged the following: before, during and after their time in the Birmingham Police Department Narcotics Unit, plaintiffs sought to expose allegedly corrupt connections between police, city officials and drug dealers; and, as a result of these efforts, plaintiffs were exposed to retaliatory harassment, threats and transfers to keep them quiet about affairs that might be a matter of public concern. In essence, plaintiffs allege that they are "whistleblowers" and that defendants violated plaintiffs' free-speech rights by retaliating against them for their efforts. Taking these allegations as true, plaintiffs have stated a free-speech claim for which relief might be granted. Cf. *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 n.2 (11th Cir. 1989) (First Amendment protects public employees' right to speak about issues of public concern.)

*Oladeinde*, 963 F.2d at 1486. Now, plaintiffs have <u>proven</u> what they only alleged as free-speech claims. The Eleventh Circuit held only the obvious, namely, that police officers have the same rights that other citizens have to reveal or to bring forward information of general importance despite any contrary desire by their superiors. The information arrived at by plaintiffs from their connection with the Drug Task Force transcended police disciplinary concerns, and they were not gagged by "loyalty" to the chain-of-command concept.

This case bears no similarity to *Morris v. Crow*, 142 F.3d 1379 (11th Cir. 1998), despite defendants' argument that it does. In *Morris*, the Eleventh Circuit found that a routine police <u>report</u> is not automatically a matter of "public concern." The Eleventh Circuit there said:

> Whether a public employee's speech is protected depends upon whether the expression can be "fairly characterized as constituting speech on a matter of public concern." Whether plaintiff's speech related to matters of public concern is a legal question we review *de novo*. This protection springs from recognition of the public employee's right to engage in free speech and self-expression while participating in public and social affairs. Absent extraordinary circumstances, such protection is unavailable, however, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interest."

*Morris*, 142 F.3d at 1381 (citations omitted). If the Eleventh Circuit has not already decided that plaintiffs' speech as described in their complaint "related to matters of public concern," this court now resolves that "legal question" by saying, "Yes, it did."

If Oladeinde and Fields were insubordinate, why were they not fired instead of simply hassled and disciplined in sometimes unsubtle and unreviewable ways? The answer is not found by distinguishing *Morris*, but by reading what the Eleventh Circuit held in 1992, namely, that the speech here exercised by Oladeinde and Fields involved matters of general public interest and concern. The Eleventh Circuit did not equivocate on this subject. It left no doubt, and this court would have reached the same conclusion without coaching by the Eleventh Circuit.

This court is impressed by the similarity between the facts of the instant case and the facts dealt with by Judge Oberdorfer (incidentally, a Birmingham native), in *Fox v. District of Columbia*, 887 F. Supp. 6 (D.D.C. 1995), wherein (1) a public official in D.C.

23

learned during his official duties that public funds had been stolen; (2) he spoke out publicly about it; and (3) he was retaliated against. The D.C. Circuit in reviewing the case held that plaintiff's report of the theft was a matter of public concern, even though it was also an internal matter. *Fox v. District of Columbia*, 83 F.3d 1491 (D.C. Cir. 1996). On remand, Judge Oberdorfer was in the same position this court is in now. Accordingly, Judge Oberdorfer held:

> The Court of Appeals has already determined the first of these legal questions, by holding that the theft of $500 from the Lottery Claim Center was a matter of public concern.

*Fox v. District of Columbia*, 990 F. Supp. 13, 16 (D.D.C. 1997) (emphasis supplied).

Walker and Deutcsh are quick to point out that the Eleventh Circuit concluded its 1992 *Oladeinde* opinion with these words:

> We stress, however, that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings as more facts are developed).

(emphasis supplied). Unfortunately for Walker and Deutcsh, no "more [important] facts were developed," and certainly no facts that would change the Eleventh Circuit's 1992 conclusion that plaintiffs' speech, as described, was of the variety protected by the First Amendment. Thus, despite a six-year, off-and-on attempt to establish that plaintiffs' efforts to express themselves were not "protected speech," defendants have utterly failed to maintain all of the essential components for a qualified immunity defense.

24

Lastly, defendants rely upon *Martin v. Baugh,* 141 F.3d 1417 (11th Cir. 1998), a case in which this court recently was reversed by the Eleventh Circuit for denying summary judgment to a City supervisor charged by a City employee with retaliating against him for "whistleblowing."   There is some similarity between Martin's activities and those of Oladeinde and Fields.   In a panel opinion as to which there is a pending application for rehearing, the Eleventh Circuit said:

> Here, Martin has failed to satisfy this court that the law was "developed in such a concrete and factually defined context" that Baugh should have known Martin's speech was constitutionally protected.   *See Beauregard*, 84 F.3d at 1404.   Martin points to no case, and we find none after our own search, that would have made it obvious to a person in Baugh's position that Martin's speech to Blake and the FOP was constitutionally protected.   Nor does Martin allege facts that, taken in a light most favorable to his claims, would make it clear to every reasonable person that his speech must pass the *Pickering-Connick* test.   Thus, it was not clearly established when Baugh acted that he was violating Martin's First Amendment right.

*Martin*, 141 F.3d 1420-21.

This court readily concedes that, if Walker had carefully checked Westlaw or Lexis fifteen minutes before the derringer incident, he would have found no decision by the Eleventh Circuit or the Supreme Court holding that a police captain violates the First Amendment if he places a derringer and two bullets on his desk while denying a subordinate her request to visit a prosecutor with information about possible criminal activity by their police chief. Unfortunately for Walker and for Deutcsh, plaintiffs in this case have one case that describes their speech as constitutionally

protected, namely, the 1992 opinion of the Eleventh Circuit, that is, unless the Eleventh Circuit intended in *Martin* to overrule *Oladeinde*.

## What about *Scala*?

If this court understands Deutcsh, he argues that he was not the final authority for deciding upon police promotions, and, therefore, that he is insulated from liability by the holding in *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 1997). This argument is flawed in several respects. First, defendant City, while trying earlier to snuggle up close to *Scala,* argued to this court that the final decisionmaker in this context was the Personnel Board of Jefferson County. The City was then, and is now, represented by the same counsel as is Deutcsh. Second, notwithstanding a possibility of administrative review and corrective action by higher authority, an individual who acts under color of state law to interfere with free speech is liable under § 1983 to the extent that his action or non-action is the proximate cause of that interference. Furthermore, the testimony here was that the Mayor had never overridden one of Deutcsh's promotion decisions, so that Deutcsh's decision to "scratch" Oladeinde from consideration for promotion to lieutenant was the direct cause of her not being promoted. The jury, in response to Deutcsh's *Mt. Healthy* defense, found on substantial evidence that Deutcsh would not have made that decision but for his retaliatory motive. *Scala*

26

is designed primarily, if not exclusively, to insulate
municipalities from § 1983 liability. It does not automatically
insulate an individual actor, whether or not he is the final
decisionmaker for the municipality. And even if *Scala* should apply
to Deutcsh personally, Arrington's alleged "open door policy" did
not constitute the "meaningful review" required by *Scala* if a lower
level constitutional violator is to be protected from § 1983
liability. To the extent the existence or non-existence of a
"meaningful review" is a matter for the court and not the jury, this
court finds that in this case there was no meaningful avenue for
Oladeinde past Deutcsh.

### Oladeinde's Equitable Claim for a Promotion

In his closing argument, Deutcsh's counsel said of Deutcsh:
"We're [Deutcsh] going to put her [Oladeinde] and her career in a
holding pattern ...." Of course, counsel did not ascribe to Deutcsh
the motive that the jury ascribed to him. The jury found Deutcsh to
be responsible under § 1983 constraints for refusing to promote
Oladeinde. Because he is no longer police chief, Deutcsh has no
power today to order Oladeinde's promotion. The present chief of
police, who was a witness in the case, is not a defendant and is
therefore not subject to this court's order. The City, however,
which was and remains a defendant, but was not found liable for
monetary damages, is still subject to the possibility of being
ordered to promote Oladeinde, something she asked for originally and

27

reiterates in her post-judgment motion.

If, as the jury found, Deutcsh should have promoted Oladeinde when he had the power to do so, why should this court, in an exercise of its equitable powers under § 1983, clearly invoked by Oladeinde, not order her promotion now? This court believes that it not only has the power to grant Oladeinde's request under the procedural circumstances but, based on the jury's findings, is compelled to do so.

Two cases are instructive.  The first is from the Eighth Circuit, which in *Burton v. Armontrout*, 975 F.2d 543 (8th Cir. 1992), dealt with the granting of injunctive relief in a jury trial § 1983 case.  It there said:

> Armontrout argues the district court lacked jurisdiction to order injunctive relief because the court and the jury determined the correctional officers did not violate the inmates' constitutional rights.  Courts have broad discretionary power to order injunctive relief, *Taylor Bay Protective Ass'n v. Administrator, United States E.P.A.*, 884 F.2d 1073, 1079 (8th Cir. 1989) (quotation and citation omitted), and we review the district court's grant of injunctive relief for abuse of discretion. *International Ass'n of Machinists v. Soo Line R.R. Co.*, 850 F.2d 368, 374 (8th Cir. 1988) (en banc), cert. denied, 489 U.S. 1010, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989) (citations omitted).  "Abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." *Id.* Although the district court must grant equitable relief that is "consistent with the facts as found by the jury," *Peery v. Brakke*, 826 F.2d 740, 746 (8th Cir. 1987), the court may grant injunctive relief despite a jury's determination that defendants are not liable for damages. See *Johnson v. Bowers*, 484 F.2d 1053, 1056 (8th Cir. 1989) (court ordered injunctive relief for inmate despite jury verdict in favor of prison doctors).  In ordering this relief, the court may rely on evidence not presented to the jury when the jury's factual findings are incomplete or inconclusive.  See *Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 472 (3d Cir. 1990)).  In this case,

> the jury's findings are inconclusive because the general verdict
> directive did not allow the jury to make specific factual findings
> upon which the district court could rely when crafting or denying
> the injunction.
>
>       *     *     *
>
> Keeping in mind that "equitable remedies are a special blend of what
> is necessary, what is fair, and what is workable," *Lemon v.*
> *Kurtzman*, 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151
> (1973) (footnote omitted), we hold that the district court did not
> abuse its discretion in ordering the injunction.

975 F.2d 544-45 (emphasis supplied).

The second helpful opinion comes from the Eleventh Circuit
itself.  There, in *Haskins v. City of Boaz*, 822 F.2d 1014 (11th
Cir. 1987), a jury had found an at-will assistant police chief to
have been wrongfully terminated for exercising his free speech
rights.  There was no discussion by the Eleventh Circuit of what
the police officer's speech consisted.  Either the parties did not
raise the issue of whether the speech was, in fact and law,
"protected," or his speech was found to be of the protected
variety.  The Eleventh Circuit held:

> When federal rights are violated, "it has been the rule from
> the beginning that courts will be alert to adjust their remedies so
> as to grant the necessary relief. *Bell v. Hood*, 327 U.S. 678, 684,
> 66 S. Ct. 773, 777, 90 L.Ed. 939 (1946).  <u>In a jury trial setting,
> the trial court may reserve determinations of equitable remedies</u>.
> See *Williams v. City of Valdosta*, 689 F.2d 964, 976 (11th Cir.
> 1982).  <u>After the jury reaches its verdict the court then may decide</u>
> <u>"the propriety of equitable relief based on the facts as found by</u>
> <u>the jury."</u>  *Id.* at 977 (emphasis in original); accord *Best v.*
> *Boswell*, 696 F.2d 1282, 1287 (11th Cir.), cert. denied, 464 U.S.
> 828, 104 S. Ct. 103, 78 L.Ed.2d 107 (1983).  <u>Such relief is not an</u>
> <u>impermissible additur</u>.

822 F.2d at 1015 (emphasis supplied).  A promotion of Oladeinde to

lieutenant at this time is entirely consistent with this jury's finding that Deutcsh should have promoted her, when, as a practical matter, he had the power to do it.

This court agrees with the jury's finding, and accordingly finds as a fact for the purpose of fashioning equitable relief, that Deutcsh was substantially motivated by a desire to punish Oladeinde when he said, "scratch her," and, thereby, eliminated her from consideration for promotion.  This court agrees with the jury's finding and finds as a fact that, but for Deutcsh's § 1983 violation, Oladeinde would have been promoted.  Based on these facts, the court concludes that Oladeinde is entitled to the equitable relief she seeks, relief that the jury could not have been asked to provide and could not have provided.  Oladeinde's request for such relief presented a matter necessarily reserved to the court.  The mere fact (1) that the Mayor went out of the case as a defendant in 1992 and (2) that the City is not liable for monetary damages to Oladeinde, do not preclude the court's exercise of its equity powers to accomplish complete and appropriate relief not inconsistent with the jury's verdict.

30

## Conclusion

Separate orders consistent with the foregoing findings and conclusions will be entered.

DONE this __29ᵗʰ__ day of July, 1998.

_William M. Acker_

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

31