IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

99 APR 22 AM II: 40

U.S. DISTRICT COURT
N.D. OF ALABAMA

VALINDA F. OLADEINDE, *et al.*,    )
                                   )
    Plaintiffs,                    )
                                   )
v.                                 )    CV-91-AR-0196-S
                                   )
CITY OF BIRMINGHAM, *et al.*,      )
                                   )
    Defendants.                    )

ENTERED

APR 22 1999

### MEMORANDUM OPINION

After unprecedented travail and travel, this case may be in
its final stages. The court may now have before it the most vexing
issue it has faced since 1991 when the case began, namely, the
possible indemnification of judgment debtors, Arthur Deutcsh
("Deutcsh") and Julius Walker ("Walker"), by City of Birmingham
("City"). A finding of indemnity will require payment by City of
the judgments against Deutcsh and Walker in favor of plaintiffs,
Valinda F. Oladeinde ("Oladeinde") and Patricia Fields ("Fields").
This post-judgment issue is properly before this court under Rule
69, F.R.Civ.P., as a proceeding supplementary to and in aid of
judgment. Also, by order of December 22, 1998, this court vacated
its order of July 29, 1998, insofar as that order found moot
plaintiffs' petition for declaratory judgment on the question of
indemnity.[1] In other words, the question of plaintiffs'

---

[1] On December 18, 1998, Oladeinde and Fields moved for relief from final
judgment. The order of December 22, 1998 granted that motion, stating as
follows:

    The order entered on July 29, 1998, is **VACATED** insofar as it finds
    "moot" plaintiff's motion for declaratory judgment against the
    City of Birmingham on the indemnity questions. Instead, the court
    **GRANTS** plaintiffs' motion for declaratory judgment as an



entitlement to a declaration of an entitlement against City was re-opened and remains to be addressed. Whether on the basis of Rule 69, or as a declaratory judgment proceeding, no doubt lingers about this court's jurisdiction to answer the indemnity question, despite the fact that City refuses to acknowledge that the court has unequivocally decided that it has jurisdiction over the matter. Despite several admonitions to stop trying to challenge jurisdiction, a subject that is preserved and can be presented on appeal, City has continued to make submissions as if the proceedings constitute some sort of separate and distinct action over which this court must have some new and independent jurisdictional basis in order to proceed. If this were an entirely separate proceeding for indemnity, this court might not have jurisdiction, but, as this court has pronounced over and over again, the question to which this court is now responding can be addressed in this court, without a jury, both under Rule 69 and under the re-opened prayer for declaratory judgment.

City previously responded to plaintiffs' renewed declaratory judgment motion with a document labeled "Answer," as if plaintiffs' post-judgment motion formed a fresh complaint in a new and separate action. The court will continue to express its consternation for City's refusal to quit challenging jurisdiction as long as the City refuses to quit. Hopefully, this will be the last time in this court. City now files what it styles a "Motion for Summary

---

alternative means for conferring jurisdiction in this court over the claims by plaintiffs that the City is obligated to indemnify defendants Deutcsh and Walker against plaintiffs' judgment.

CV-91-AR-0196-S

Judgment" in response to the request by the court that the parties brief the merits of the indemnity question.  Again, City appears to hope that it can get the court to change its mind by repeating its jurisdictional arguments *ad nauseum*.  It relentlessly treats these proceedings as if they constitute a separate case.  This court will not "deny" City's procedurally inappropriate motion, because that would imply a consideration on its merits.   Instead, City's purported motion will be stricken. This does not mean that the court has not read and considered the documentation filed with City's motion, essentially treating it as if it were the brief requested in the first place.

### Posture of the Case

Despite its protracted nature, the titanic record, and the unheard-of procedural wrangling, the issues have now been reduced to a manageable posture.

After jury trial on the merits, Oladeinde and Fields obtained judgments only for compensatory damages against Deutcsh and Walker.[2]  Because neither Deutcsh nor Walker filed a supersedeas bond, collection of the judgments against them could proceed despite their appeals.

A number of Alabama statutes and provisions in City's code are cited by the parties as bearing on the indemnity issue.   City provided and paid for defense counsel for both Deutcsh and Walker

---

[2] Defendants City and R.L. Webb were not found liable under any of plaintiffs' claims.  City also counterclaimed against Oladeinde and won a judgment against her in the amount $2056.

CV-91-AR-0196-S

prior to, during, and after trial, and up to the present. Until the judgment debtors formally demanded indemnification from City, the interests of City, Deutcsh, and Walker were aligned. The defense of all three defendants was strategically unified. City ultimately denied indemnification, placing the judgment debtors in an adversarial position to City. New attorneys for both Deutcsh and Walker were then chosen by City and paid for by City. Those attorneys are both handling their clients' appeals and their efforts to obtain indemnity.

The court has discussed more than once the conflict-of-interest inherent in the City's providing representation for Deutcsh and Walker. The strain on counsel's allegiance to their competing clients has long worried this court. That worry was exacerbated by the timidity with which counsel for Deutcsh and Walker have pursued indemnification. It is a good thing that plaintiffs' counsel, who are equally interested in indemnification, have been so dogged. Their diligence is, of course, dictated by self-interest, a good motivation for an advocate.

Deutcsh and Walker say that they have insufficient assets from which to collect the judgments. This court is not aware of any attachment proceedings against the homes, cars, or other real or personal property of Deutcsh or Walker. By writs of garnishment, plaintiffs attempted to garnish Walker's salary and Deutcsh's retirement benefits, but this court quashed those garnishments as incompatible with Alabama's procedures for post-judgment collection. Plaintiffs also garnished City for any other debt, such as those arising from indemnities, due Deutcsh or Walker.

Plaintiffs and both judgment debtors are now urging, contrary to, and despite, City's denial, that indemnification exists. Plaintiffs not only claim, as do their judgment debtors, that such an indemnity exists, but that it is garnishable, as well.  The court, by special order, similar to a pre-trial order, demanded the filing of all relevant evidence that the parties could produce, thus circumventing the procedural morass that City had been enjoying.

### Statutory Provisions Cited By the Parties

The parties have unanimously turned to certain provisions of the Alabama Code.  The indemnity statute, Ala. Code § 11-47-24, provides, in pertinent part:

> Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties,... such government agency shall be authorized and required to provide defense counsel for such employee in such suit and to indemnify him from any judgment rendered against him in such suit.  In no event shall a municipal corporation of the state be required to provide defense and indemnity for employees who may be sued for damages arising out of actions which were either intentional or willful or wanton.

*Ala. Code § 11-47-24(a)* (1975) (emphasis added).  It is to be noted that the Legislature, in its wisdom, refused to "require" indemnity by a municipality when its employee's conduct is "intentional" or "willful" or "wanton", but left the municipality free, if it voluntarily decides to do so, to provide indemnity.

Birmingham City Code § 2-4-11 similarly provides for the defense and indemnity of City employees who are sued.  In pertinent part, it says:

> Except as hereinafter excluded or otherwise limited, the city of Birmingham (the city) shall provide legal representation for its... employees and shall indemnify such persons with regard to such civil

CV-91-AR-0196-S

claims as such persons may be legally obligated to pay where the
incident or occurrence giving rise to such representation or payment
was one arising out of and within the line and scope of their
employment for or engagement on behalf of the city.
*Birmingham City Code § 2-4-11(I)(a).*

Elsewhere in § 2-4-11, the City Code provides:

The city's obligation hereunder to pay on behalf of any such person
claims or moneys damages arising out of any one (1) occurrence shall
not exceed $25,000 to any one (1) person and $50,000 aggregate to
two(2) or more persons for personal injury and shall not exceed
$10,000 in property damage, unless a greater amount is approved by
majority vote of the city council; and in no event shall the city's
obligation exceed the maximum statutory limits of liability
established for the city by state law.
*Birmingham City Code § 2-4-11(III)(a).*

Like § 2-4-11, Alabama has two statutes which also purport to

limit damages recoverable from a municipality.   The first, Ala.

Code § 11-93-2 (1975), reads as follows:

The recovery of damages under any judgment against a governmental
entity shall be limited to $100,000 <u>for bodily injury or death</u> for
one person in any single occurrence.... Recovery of damages under
any judgment against a governmental entity shall be limited to
$100,000 <u>for damage or loss of property</u> arising out of any single
occurrence...

*Id.* (emphasis added).  The Alabama Supreme Court has construed this

cap on damages to apply to indemnification sought from a

municipality in satisfaction of a judgment against its employee.

*See Benson v. City of Birmingham*, 659 So.2d 82 (Ala.

1995)("Benson").

Also, Ala. Code § 11-47-190 purports to limit the damages

recoverable from a municipality by limiting the scope of employee

conduct that can legitimately be subject to indemnity, and by

setting a monetary cap on damages:

No city or town shall be liable for damages for injury done to or
wrong suffered by any person or corporation, unless such injury or
wrong was done or suffered through the <u>neglect, carelessness or
unskillfulness</u> of some agent, officer or employee of the
municipality engaged in work therefor and while acting in the line
of his or her duty... However, no recovery may be had under any
judgment or combination of judgments, whether direct or by way of

> indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding.

*Id.* (emphasis added).

City would stretch these statutes to prevent indemnification for any conduct that is outside the "line and scope of employment."

City argues that this jury, in its answers to special interrogatories, necessarily found that Deutcsh and Walker acted outside the line and scope of their duties. By implication, the argument continues, indemnification is disallowed by the above-cited Alabama statutes, as well as by City Code § 2-4-11. City concludes by arguing that even if some degree of indemnification were appropriate in this case, City's liability is limited in amount by § 2-4-11, or by § 11-93-2, and/or by § 11-47-190.

Deutcsh and Walker, in response, contend that their conduct, both alleged and actual, falls within the line and scope of their duties, and therefore that indemnification is due under the very same provisions of law. Their argument seems to accept City's presentation of the applicable law. They proceed on the assumption that they must comply with City's understanding of the prerequisites for indemnity. Their briefs only attempt to demonstrate that they do, in fact, meet these requirements. They never argue with City, as plaintiffs do, about what those requirements are.

A cursory reading of the cited statutes is not enough. A close reading is necessary to obtain the full picture. For instance, § 2-4-11 authorizes Birmingham's City Council to override

the section's limitations, granting indemnities <u>beyond</u> the section's purported caps up to the "maximum statutory limits" under state law.  Section 2-4-11 does not itself create any absolute bar to indemnification.

Under state law, § 11-47-24 not only authorizes a municipality to defend and to indemnify its employees; it affirmatively <u>requires</u> defense and indemnity in appropriate cases.  The enumerated limitations clearly modify the statute's own first requirement, meaning that the <u>statute itself</u> cannot be construed to "require" defense and indemnity if the employee's conduct, out of which liability arises, is either "intentional," or "willful," or "wanton."  The statute in no way suggests that a municipality cannot <u>voluntarily</u> undertake to defend and/or to indemnify its employee, regardless of the nature of his or her conduct.  Although the statute itself does not always require defense and indemnity, neither does § 11-47-24 prevent another fact from obligating a city to defend and indemnify.  For instance, an indemnity obligation might arise pursuant to employment contract.  City is mistaken to argue that § 11-47-24 acts as a bar to indemnification.

City's reliance on § 11-93-2 is also misplaced. The statute is clearly inapplicable, because it only applies to cases of wrongful death or property damage.  *Benson, supra,* a case similar to this one in several respects, involved the garnishment of an indemnity owed by this very same City for a judgment entered against a police officer.  It was a wrongful death case.  The Alabama Supreme Court found that § 11-93-2 limited the amount of indemnity owed to the officer – and ultimately to the plaintiff via garnishment – just as

if the municipality had itself been the judgment debtor.  Unlike *Benson*, however, the instant case is neither a wrongful death case nor a property damage case.  Section 11-93-2, including its interpretation under *Benson*, simply does not apply.

Among the statutes relied upon by City is § 11-47-190, a statute that offers a glimmer of hope for an argument for barring indemnification under the facts of the instant case.  By its language, § 11-47-190 rules out direct recovery from a municipality for the intentional wrong of its employee.  It provides recovery only for damages suffered through the "neglect, carelessness or unskillfulness" of that employee.  Section 11-47-190 further purports to limit recovery to $100,000 per injured person.  As will hereinafter be shown, however, this provision of Alabama substantive law does not provide the final solution to the conundrum in this case.

The Alabama Code provisions above discussed, taken as a whole, fail to provide any insurmountable obstacle to indemnity under the totality of circumstances in this case.  And even if each and every one of the provisions were applicable to the facts of the present case, indemnification would not be precluded, because as the court will demonstrate, these statutes do not prevent a finding of indemnification under federal law.  Assuming *arguendo,* then, that these statutes, or some of them, facially may apply, the indemnity question is still open.

The jury was asked in special interrogatories whether Deutcsh and/or Walker violated 42 U.S.C. § 1983 in a way that was "willful, intentional or in callous and reckless indifference" to plaintiffs'

First Amendment rights.[3]   With regard to Deutcsh, the jury answered "Yes" as applied to Oladeinde, but "No" as applied to Fields.  With regard to Walker, the jury answered "Yes" as applied to both plaintiffs.  City rests in the belief that because Deutcsh and Walker were found to have acted in a way that could be characterized as "willful, intentional, or in callous and reckless indifference," it follows that its two employees have acted outside the line and scope of their duty.

The jury's answers do not mandate such a course of reasoning. First, it is clear that the jury was never asked whether Deutcsh and/or Walker acted outside the scope of their employment. Therefore, to argue that Deutcsh and Walker did act outside the line and scope of duty, City must ask the court to draw an inference from the jury's answers to the actual interrogatories, an inference the jury did not draw and was not asked to draw.

Because neither § 11-47-24 nor § 11-93-2 precludes City from indemnifying Deutcsh and Walker, as discussed above, City is left with § 11-47-190, which purports to prevent indemnity unless the damages complained of were caused by "negligence, carelessness or unskillfulness."  Alabama courts have construed § 11-47-190 to absolve municipalities from liability for "intentional" tortious conduct by their agents or employees.  The language of the Alabama cases, taken out of context, would at first glance seem to support

---

[3] The wording of the interrogatory was drawn from *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625 (1983)("Smith"), which sets out the standard by which punitive damages can be awarded in a § 1983 action.  *Smith* stated, "A jury may be permitted to assess punitive damages in a § 1983 action when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent."  *Id.*, at 1627.

CV-91-AR-0196-S

City's position, but there is an important difference between the broad meaning of "intent" under <u>federal</u> law, for purposes of punitive damages under § 1983, and "intent" under <u>Alabama</u> law for purposes of § 11-47-190.  Although Alabama courts have interpreted § 11-47-190 to preclude municipal liability for intentional wrongdoing by an employee, those same courts have consistently used the term "intent" in reference to <u>willful</u> intent or actual malice. In other words, Alabama case law has consistently granted municipal immunity under § 11-47-190 <u>only</u> when the wrongful conduct involved an intent to break the law.  *See, e.g. Ex parte The City of Gadsden and Brent Brewer*, 718 So.2d 716 (Ala. 1997) (promissory fraud); *Altmayer v. City of Daphne*, 613 So.2d 366 (Ala. 1993) (willful and reckless misrepresentations and promissory fraud); *Scott v. City of Mountain Brook*, 602 So.2d 893 (Ala. 1992)(civil conspiracy and intentional interference with business relationship).   In these cases, because municipal employees committed intentional acts, their employers were not required to indemnify.

A more recent trend in Alabama jurisprudence limits the scope of municipal immunity under § 11-47-190.   In the most recent Alabama appellate decision involving the intentional act of a municipal employee, the employer was required to indemnify, § 11-47-190 notwithstanding. *Luckie v. City of Montgomery*, 1999 WL 64930 (Ala.Civ.App.), is so brand new that it is not yet in the books. In that case, the Alabama Court of Civil Appeals flatly refused to extend immunity from indemnity under § 11-47-190 to a situation in which an injured plaintiff asserted egregious conduct, *i.e.*, false arrest, false imprisonment, and assault and battery.   *See also*

*Franklin v. City of Huntsville*, 670 So.2d 848 (Ala. 1995)(false arrest and imprisonment). *Luckie* reflects an awareness of an important distinction between "intent" and "willfulness," in a manner similar to this court's understanding of those terms under § 1983 case law. "Intent" involves only the knowing desire to do the act which gives rise to a claim under § 1983; "willfulness," on the other hand, involves an awareness that the conduct will violate the law, and an intent nonetheless to engage in that conduct. When the Alabama courts have found "willfulness," as in cases of promissory fraud, § 11-47-190 has been construed to preclude indemnity. When mere "intent" has been found, but not "willfulness," Alabama courts are increasingly reluctant to apply § 11-47-190 as a means for insulating a municipality from indemnity.

Under the standard enunciated in *Smith, supra*, punitive damages can be awarded under § 1983 if a jury finds intent, <u>or</u> finds willfulness, <u>or</u> merely finds callous and reckless indifference. The jury interrogatories in the present case reflect this standard under § 1983. The jury here determined that Deutcsh and Walker violated § 1983 by conduct that was intentional <u>OR</u> willful <u>OR</u> callously and recklessly indifferent. <u>These are</u> <u>alternatives</u>. As above demonstrated, Alabama case law supports municipal immunity under § 11-47-190 only if the municipal employee's wrongful conduct was "<u>willfully</u>" intentional and not merely "intentional," as this court has distinguished these terms (even if Alabama courts use the blanket term "intentional" for both meanings). Because it is not at all clear if this jury intended to

characterize Deutcsh's or Walker's conduct merely as "intentional," or merely as "willful," or merely as "callously and recklessly indifferent," it is simply not the case, as City argues, that § 11-47-190 forecloses indemnity, <u>even if</u> Alabama law were controlling on the substantive issue of the availability of damages in § 1983 cases.  The fact that this jury did not impose punitive damages on either Deutcsh or Walker is some evidence that it found their conduct not particularly egregious.[4]

Based on the law of the Eleventh Circuit, the availability of damages under § 1983 is a question of <u>federal law</u>. *See Gamble v. Florida Dept. of Health and Rehab Servcs.*, 779 F.2d 1509, 1518, n. 11 (11th Cir. 1986).  Under Rule 69, the <u>procedure</u> "on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution <u>shall be in accordance with the practice and procedure of the state</u> in which the district court is held." *Id.* (emphasis added).  Exercising its equitable powers, this court must determine the existence or non-existence <u>under federal law</u> of an obligation by City to indemnify Deutcsh and Walker.[5]  In compliance with Rule 69, Deutcsh, Walker, Oladeinde, and Fields must proceed, and are now proceeding, according to the <u>procedures</u> provided by <u>Alabama law</u> for execution on a judgment, but the substantive law on indemnity remains essentially <u>federal</u>.

---

[4] No evidence was presented to the jury concerning ability to pay or the possible existence of an indemnity.

[5] *See also Argento v. Village of Melrose Park*, 838 F.2d 1483, 1490 (7th Cir. 1988) ("To the extent that Rule 69(a) incorporates state practice and procedure as the federal rule... it is actually federal law that is being enforced.")

This court's understanding of the principles established for considering § 1983 and Rule 69 in juxtaposition means that neither § 2-4-11 of the Birmingham Code, nor § 11-47-24, nor § 11-93-2, nor § 11-47-190 of the Alabama Code, can without more, determine whether an indemnity exists in this case. This question must be decided pursuant to principles of equity in <u>federal</u> practice. Neither can these code provisions limit the <u>amount</u> of recovery under <u>federal</u> law.

One persuasive federal district court in Alabama has found that Alabama's statutory cap on damages in suits against public employees cannot bind federal courts when considering the availability of damages under federal law. *See Patrick v. City of Florala*, 793 F.Supp. 301 (M.D.Ala. 1992). In that case a former police chief brought suit under § 1983 and Title VII for a termination that he claimed was racially motivated. Chief Judge Thompson ruled that because claims for damages under § 1983 always are matters governed by federal law, "state statutes purporting to limit damages available in a suit against a state actor are not applicable to suits brought under § 1983." *Id.*, at 302.

Judge Thompson's ruling is entirely consistent with this court's order quashing the garnishments of Deutcsh's retirement benefits and of Walker's salary. Federal law determined the substantive issue of the § 1983 damages sustained by Oladeinde and Fields, and those amounts became payable upon entry of judgment after trial. Exactly <u>what</u> was due was therefore appropriately determined by federal law under § 1983. Pursuant to Rule 69, however, post-judgment collection proceedings must follow the

procedures provided by Alabama law.  In other words, <u>how</u> to collect the judgments follows the avenues provided by Alabama law.  Alabama does not allow the garnishment of pension benefits or public salaries as a procedure to satisfy a judgment, so the above-referenced garnishments were properly quashed.  *See* Ala.Code § 6-6-482.   Alabama <u>does</u>, however, recognize the garnishment of <u>indemnities</u>. *See, e.g. Macy v. Crum*, 30 So.3d 666 (Ala. 1947); *Southern Guaranty Ins. Co. v. Jones*, 188 So.2d 537, 539 (Ala. 1966).   ("The authorities are general that one who recovers a judgment for damages may garnish the judgment defendant's claim on a policy or agreement insuring him against liability... for damages of the kind recovered against him by the plaintiff.").

All that remains, then, is for this court, exercising its equitable powers, to determine whether indemnification, under federal principles, is due from City to Deutcsh and/or Walker. For the reasons set out below, the court concludes that such indemnities exist and are enforceable.

## Estoppel From Denying Indemnification

Within the context of the insurance industry, it is well settled that an insurer may be equitably estopped from denying indemnity to an insured for whom it has provided a defense without a reservation of rights (*i.e.,* to later deny coverage).  *See, e.g. Integrity Ins. Co. v. King Kutter, Inc.*, 866 F.2d 408, 412 (11th Cir. 1989) ("[W]here an insurance company assumes the defense of an action without a reservation of rights and with full knowledge of facts that would have permitted it to deny coverage, the company

may be estopped from subsequently raising the defense of non-coverage"). The current posture of the relationship between City and these two judgment debtors is strikingly analogous to a situation where a defending insurer has belatedly denied coverage to its insured. For the many reasons that follow, the court finds that City is estopped from denying indemnification to Deutcsh and Walker.[6]

City asserts that it makes determinations at several stages during the course of litigation involving employees as to whether a particular employee acted within the line and scope of duty, initially determining only whether to <u>defend</u>, and only later determining what sort of <u>indemnity</u> or "coverage," if any, it will provide. This contention is belied by City's actual practice, revealed by the most striking actual occurrence uncovered by plaintiffs, namely, *Blake, et al. v. Arrington, et al.*, CV-98-175, in the Circuit Court of Shelby County, Alabama. City Council's Resolution No. 856-98 is an eye-opener. *See court document #581, Exh. A.* It unabashedly states that "the Law Department, via Chief Assistant City Attorney Bill Pate, has determined that Mayor Arrington, City Attorney Newton and attorney Watkins are entitled to City representation <u>and indemnification</u>" (emphasis added), and further that "Mr. Pate, on behalf of the Law Department, has recommended to this Council that Mayor Arrington, City Attorney

---

[6] The court commends plaintiffs' counsel for once again furnishing a brief that serves to remind the court of City's representations throughout this litigation that suggest, or support, or assume indemnification. The conflict-of-interest of counsel for judgment debtors is highlighted by the fact that plaintiffs' counsel have done their job for them.

Newton, and attorney Watkins be provided City representation <u>and</u> <u>indemnification</u>" (emphasis added). This resolution was adopted on April 7, 1998, <u>before</u> any trial of the *Blake* case, and before Oladeinde's and Field's cases were tried to a jury. Clearly, City can and does make determinations regarding indemnity without first setting up hoops for its employees to jump through.

Furthermore, prior to providing <u>representation</u> for Deutcsh and Walker in this case, City actually made a determination that Deutcsh and Walker acted "within the line and scope." Based on City's own assertions, as well as on the *Blake* resolution, *supra*, only after such a determination, either explicit, implicit, assumed, or otherwise, <u>could</u> City have provided a defense for Deutcsh and Walker. Prior to making its determination to defend and indemnify, City knew of plaintiffs' allegations that Walker had threatened and intimidated them by placing a derringer on his desk. These allegations were contained in the complaint itself, and Walker had already acknowledged the incident, although he claimed a different meaning for it (not intimidation but failed humor). City necessarily took the incident into account when it made its determination that Walker acted within the line and scope of his duty. City has undergone a change of mind only after the jury verdict against Walker.

Long before trial, City was also fully aware of the accusations against Deutcsh. Nevertheless, it continued to provide representation to Deutcsh. Again, according to City's claimed policy, it was unable to provide a defense without first determining that its employee acted within the line and scope. Did

City fail to make such a determination in Deutcsh's case?  If it did, it has changed its mind twice on the same subject.

As evidenced by this court's opinion of January 23, 1998, the court was at that time persuaded by the course of proceedings, and by the representations of counsel for Deutcsh, Walker, and City, that indemnification <u>had been taken for granted</u>. The subject of the order of January 23, 1998 was a renewed motion by Deutcsh (and City) for the appointment of a guardian *ad litem* for Deutcsh, based on the allegation that Deutcsh might be incompetent. Among other reasons for denying said motion, the court noted its assumption that "Deutcsh's best protection in this case is his representation by competent counsel <u>and the obligation of his former employer, City of Birmingham, to indemnify him against any liability which may arise out of what he is alleged to have done or failed to do within the line and scope of his employment as police chief of the City</u>." *Id.*, at 4. (emphasis added). Because Walker's circumstances did not differ materially from Deutcsh's, this court assumed that indemnity would be forthcoming for Walker, too.

City must have recognized the court's assumption that indemnity for § 1983 liability was appropriate, (even though § 1983 liability presupposes <u>intentional</u> violations of a federally protected right) because it sought to ensure that potential judgments would distinguish between compensatory damages (for which indemnification would certainly be appropriate), and punitive damages (for which indemnification arguably might not be appropriate).  At the pre-trial conference, City continued to induce the belief by Deutcsh, Walker and the court that it would

indemnify for compensatory damages at the very least. When City now asserts that at pre-trial it had not finally determined whether indemnification would be offered, the court reminds City that at trial there were no surprises. City early determined that there was evidence to support a determination that its employees' conduct was "within the line and scope of duty." The fact of City's actual pre-determination on the anticipated evidence is demonstrated by the very fact that the representation of City employees was undertaken at all. *See* Gayle Gear's letter to the court, October 5, 1998. *See* Transcript of Pretrial Conference (February 6, 1998) at 25-31. Therefore, City was not waiting until <u>after</u> trial to decide whether to reverse a tentative conclusion about the "line and scope of duty." It is clear that what it learned at trial and from the jury could not reasonably have changed its mind, because there was nothing material on the indemnity question to be learned at trial.

Forgetting everything else, it is clear that City never challenged the court's pre-trial assumption of indemnity. Furthermore, although City was fully aware that Deutcsh had been informed of the court's refusal to appoint a guardian *ad litem*, and the reasons for that refusal (including the assumption of indemnity), City failed to warn Deutcsh that he could not enjoy that assumption. Deutcsh had every reason to share the court's assumption, especially when his lawyers were the City's lawyers. In fact, at the pretrial conference this court directly asked City whether a written reservation of rights had been obtained. Even though that pre-trial conference occurred on February 6, 1998,

*after* the January 23, 1998 order containing the court's assumption, City admitted that it still had not reserved a right to deny indemnity to Deutcsh.   It never did.   Likewise, there is no evidence whatsoever of a reservation of rights obtained from Walker.

Even post-trial, City "laid low" on the indemnity question. As plaintiffs now remind the court, and as the court recalls from the record, when Deutcsh and Walker sought to stay collection of the judgments against them pending their appeals, City advocated on their behalf, citing, *inter alia*, the prospect of indemnity by City. Why should plaintiffs need a supersedeas bond when they have indemnity by a major municipality? Attorneys Watkins and Whatley, attorneys for City who also represented Deutcsh and Walker through trial, wrote the City Attorney, pointing out that "[t]he plaintiffs have alleged that it has been the past practice for the City to pay verdicts entered against police officers... [I]f the plaintiffs are correct, then that factor should support the City's indemnification of Deutcsh." Were Watkins and Whatley just making noise?

Nothing could be clearer than that City has an extensive pattern and practice of defending and indemnifying its employees. Plaintiffs have presented uncontradicted evidence of indemnification in numerous cases involving City employees. The many discovery disputes in this case reveal how reluctant City was to divulge to plaintiffs, or to the court, its actual practice in this regard.   This potentially important information, now finally revealed, explains City's reluctance.   Post-judgment discovery responses show that City's earlier claims bearing on its indemnity

practice were less than forthright.  The frequency and largess of
City's indemnity practice bear little, if any, resemblance to what
it first described as its practice.  How ironic it is that the most
telling revelation about City's indemnification habit comes through
an affidavit by Bill Dawson, one of plaintiffs' counsel.    Mr.
Dawson once represented Police Chief Deutcsh in a § 1983 case and
successfully obtained indemnity from City on Deutcsh's behalf.  It
is no wonder that Gayle Gear, plaintiffs' other counsel, was so
persistent in seeking information about indemnity from City.
Perhaps she already knew of this past act of indemnification in a
§ 1983 case.  Why City thought it could get by with hiding this
devastating piece of evidence is hard to understand. Perhaps the
withholding of this evidence can be justified by the fact that City
was forced to switch lawyers on the indemnity question.

   Numerous other incidences of indemnity by City have been
revealed as a result of plaintiffs' dogged discovery efforts.
Post-judgment investigation has revealed a long list of cases in
which large payments have been made by City on behalf of its
employees, either as settlements or in satisfaction of judgments.
In this case, Magistrate Judge Putnam, by an order of January 20,
1999, required City to tell plaintiffs which cases involved payment
for defense but denial of indemnity.  City was at that time unable
to say that any one case involved a denial of indemnity.
Therefore, City concedes the existence of a large and long practice
of indemnifying its employees.

   City almost never, if ever, denies indemnity to those persons
it defends.   Until the very last minute, it could not identify

anyone to whom it had previously denied indemnity. Attached to its purported "Motion for Summary Judgment" is the affidavit of Michael Melton, Assistant City Attorney, who points to two cases in which City denied indemnity. However, it is clear from this affidavit that a defense was not provided in either of the cases relied on. This fact renders the two incidents inapposite. Because City has always granted indemnity in cases in which it has provided a defense, City's "policy" is to indemnify if it provides a defense. In fact, in the very same resolution granting unlimited indemnity to the employee defendants in *Blake*, the City Council says officially that "the City of Birmingham has a pattern and practice of providing a defense and indemnification."[7] From what the court easily deduces from the totality of circumstances, this Council recitation is an understatement of City's policy.

The motivations for denying indemnity in this case, after a long period of equivocation, are unclear, but City's "line and scope" argument turns out to be irrelevant. The court holds City to indemnification, not because Deutcsh and Walker acted within the line and scope of their employment (although such a finding could easily be justified), but because City is equitably estopped from denying indemnity, after having defended these judgment debtors with no reservations of rights, and on the basis of its numerous actions and statements inducing Deutcsh and Walker reasonably to

---

[7] This court is only mildly surprised that City has not relied upon *Carr v. City of Florence,* 729 F.Supp. 783 (N.D.Ala. 1990), *aff'd* 934 F.2d 1264 (11th Cir. 1991), a case decided by this court involving a city council's resolution regarding indemnification of employees. A more than adequate explanation for City's non-reliance on *Carr* is that *Carr* is so readily distinguishable that the court will spend no time distinguishing it.

rely upon the existence of indemnity.   The court notes,
alternatively, that City is equitably estopped from even arguing
that Deutcsh and Walker acted outside the line and scope of duty.[8]

To some degree a conflict-of-interest is inevitably created
whenever an insurer undertakes to provide a legal defense for its
insured. This provides another, if overlapping, reason for
indemnity in this case.   An attorney under such circumstances
cannot avoid feeling a tug on his or her allegiance from both
"clients," the insured, who is the nominal client, and the insurer,
who is paying the bill. The tug is stronger in the direction of the
pocketbook. This observation applies to the present case, where
City selected, paid for, and virtually directed attorneys who, of
record, represented individual defendants.

In the present case this inherent conflict-of-interest was
heightened. City continued to direct the joint defense of all
defendants up to and throughout the trial. The defense attorneys
acted in unified fashion as "one big happy family." See Memorandum
Opinion and Order, Dec. 22, 1998.   Because every defense attorney
effectively represented every defendant, the expectation of
indemnity was the only thing that could have made the conflict
palatable.   When Deutcsh and Walker sought to realize on that
expectation,   and City refused,   their interests   dramatically

---

[8] As discussed above, because the jury's findings do not permit the
court to ascertain how the jury chose to characterize Deutcsh's and Walker's
conduct (i.e., whether it was intentional, or willful, or merely in callous
and reckless indifference), there remains ambiguity as to whether Alabama law
would preclude indemnity, if it were controlling.  Given that ambiguity, this
court would consider the totality of circumstances, taking into account the
principles of equitable estoppel set forth herein, and would find that Alabama
law would provide indemnification.  Because Alabama law does not determine the
availability of indemnity under § 1983, this is an academic question.

diverged, to the extent of setting up an irreconcilable conflict unless and until indemnity is enforced.  As a temporary measure, new attorneys were appointed for Deutcsh and Walker, but Watkins and Whatley, two attorneys for City, who had previously acted on behalf of Deutcsh and Walker as well as City, continued to argue City's interests on the indemnity question until the court put a stop to it.  Finally deciding to do something more than to talk about the conflict, the court disqualified Watkins and Whatley from representing City as alleged indemnitor.

Another factor further heightens the conflict-of-interest in this case.  The new attorneys for Deutcsh and Walker suffer from the usual conflict, discussed above, inherent in arrangements in which an insurer (or employer, like City) pays the insured's (employee's) defense costs. That strain upon allegiance was further exacerbated where the payer, City here, is a "repeat customer" of counsel's services.  The court has been made aware that attorneys Long and Thomas have been hired on multiple other occasions to represent City interests.  They regularly defend other City employees at the behest of City.  Even if not representing City directly, some of Long's and Thomas' income comes from City. Can a lawyer who is regularly paid by an insurance company be more loyal to the insured than to the insurance company that forwards the business?  The question answers itself.

In this particular case, plaintiffs have enlightened the court about the unique nature of Long's peculiar conflict.  Long has been identified as attorney-of-record for attorney Watkins, who is a lawyer for City in the present case and a defendant in the *Blake*

case.  When Long was selected (by Watkins?) to represent Deutcsh,
Watkins was already Long's client.  Watkins was simultaneously
counsel for City opposite Deutcsh.  Not only must Long have been
reluctant to accuse his own client (Watkins) of wrongly denying
indemnity to his other client (Deutcsh), but he would not be human
if he did not shrink from biting the hand that feeds him.  Watkins
routinely selects "outside counsel" for City.[9]  To have ignored
Watkins' interests is too much to have asked of Long, that is,
unless the court recognizes the indemnity that Long finally got
around to seeking on behalf of his "client," Deutcsh.

    If an employee were aware of the conflict-of-interest inherent
in arrangements such as these, that employee, being sued for an act
done as part of his job, would be reluctant to allow his employer
to direct his defense unless indemnity was understood to exist.  If,
on the other hand, an employer is obligated to indemnify the
employee, the employer can proceed without hesitation to ensure
that the defense is strategically coordinated.  The employer's cost
of defending and indemnifying is offset by the economic benefit
resulting from an effective, jointly-controlled defense.  In the
insurance industry, the insured is typically willing to allow the
insurer to defend when indemnification is assured.  In cases where
the insurance company is not certain that indemnity is appropriate,
it routinely obtains a written reservation of rights, fully
informing the insured that indemnity may not be forthcoming. As
previously noted, <u>no reservation of rights was obtained in this</u>

---

[9] The City Council's resolution in the *Blake* documents indicate that
attorney Watkins is on retainer by City as its Special Counsel.

<u>case</u>.  Without such a reservation, this court cannot allow City to deny indemnification now.  This is even more true when it furnished a conflict-ridden defense.

As a matter both of equity and of public policy, the negative consequences that would result from allowing a public employer to deny indemnification under circumstances like these far outweighs any benefits to employers. Unless there is indemnity, a municipality's pecuniary interest lies in having no liability or minimal liability <u>for itself</u>. Cities occasionally are altruistic. In the present case, City's economic interests would have been served if Deutcsh and Walker either 1) were not liable, such that no indemnity was due, or 2) were liable in such a way that little or no indemnity was due, such as liability for atrocious conduct where public policy counsels against indemnification.

This combination of interests leads to "all-or-nothing" defense strategies of the sort sometimes found in criminal trials. For instance, a criminal defense attorney may be reluctant to allow the jury to have an option of convicting his client for manslaughter, instead of for murder. Whenever proof of the requisite intent may be shaky, the attorney may attempt to give the jury only two choices – guilty of murder or not guilty at all.  By raising the stakes, defense counsel may hope to price guilt out of reach for an equally shaky jury.  From City's point of view, raising the stakes must have been tempting, since a finding that an uninsured Walker was guilty of truly heinous conduct might have absolved City of liability for indemnification, especially if punitive damages had been awarded.  Aside from these concerns, the

court can think of a list of other possible reasons why City might not wish to pay for a defense designed exclusively to look after the interests of Deutcsh or Walker.  For instance, City might not wish to pay for an attorney with a high hourly rate, even if the particular attorney is the best qualified (or <u>only</u> qualified) attorney to deal with the peculiar or complex issues in a given case.

Deutcsh and Walker had just and reasonable cause to rely upon City's express and implied representations and upon the proven policy of City, well known by insiders such as Deutcsh and Walker (even though their lawyers make little of it).  The defense was directed by City, and City, acting through its representatives, led Deutcsh and Walker to believe that its well-understood pattern and practice would continue. Deutcsh and Walker had a right to rely on City, as they reasonably did.  City cannot be permitted to abandon Deutcsh and Walker at this late date.

This court acknowledges the existence of a public policy against the indemnification of public actors for their intentional wrongdoing.  This jury found that Deutcsh and Walker violated the civil rights of Oladeinde and Fields. But for the overriding circumstances discussed above, the court would be reluctant to take a § 1983 violator off the hook.  If the effect of indemnification here is that Deutcsh and Walker will not be held personally accountable, it is the regrettable, but inevitable consequence of effectuating equity in this case.  If City finds this outcome hard to take, it can, of course, prevent a reoccurrence by the simple expedient of exacting a reservation of rights before again

providing a conflict-ridden defense to an employee.

## Conclusion

For the foregoing separate and several reasons, the court concludes that Deutcsh and Walker are entitled to indemnity from City for the full amount of the judgments entered in favor of Oladeinde and Fields.  Anticipating a possible last roadblock, the court notes that this indemnity is <u>against liability</u>, not just against <u>loss</u>, so it is not necessary for Deutcsh or Walker to make payments upon the judgments in order to trigger City's obligation. In other words, the indemnities are due now.  *See, e.g., Michel v. American Fire and Casualty Co.*, 82 F.2d 583 (5th Cir. 1936)(ambiguity as to whether indemnity is against "loss" or against "liability" is resolved in favor of indemnification against liability).

Last, but not least, and at the risk of repetition, Deutcsh and Walker, at the instance of their "laser litigating,"[10] oftentimes protagonist employer, cannot successfully contract with that employer for the purpose, whether deliberate or inadvertent, of postponing Oladeinde's and Field's right to collect on the indemnities while appeals are under way.  Such an agreement cannot bind Oladeinde and Fields unless Deutcsh and Walker supersede the judgments against them.  The sure appeal from the order that will accompany this opinion should, in all logic, proceed in tandem with the several other appeals already in progress.  It will be

---

[10] Donald Watkins, attorney for City, has previously characterized his trial strategy as "laser litigation," whereby he attempts to wear down his opponent by filing motion after motion.  In this case, Watkins' opponents have withstood his documentary assaults.

interesting to see whether Deutcsh and Walker take an appeal or defend City's appeal.

A separate and appropriate order will be entered in accordance with this opinion.

DONE this 22ⁿᵈ day of April, 1999.

William M. Acker

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

CV-91-AR-0196-S

FILED

99 APR 22 AM 11: 40

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

APR 22 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VALINDA F. OLADEINDE,        )
et al.,                      )
                             )
       Plaintiffs,           )
                             )
v.                           )      CV-91-AR-0196-S
                             )
CITY OF BIRMINGHAM,          )
et al.,                      )
                             )
       Defendants.           )

## ORDER

The motion to strike, filed by plaintiffs on March 26, 1999, is hereby DENIED.  City of Birmingham's purported motion for summary judgment on the indemnity question is hereby STRICKEN as procedurally inappropriate.  Plaintiffs' motion for declaratory judgment, re-opened by this court's order entered on December 22, 1998, is hereby GRANTED.  Accordingly, it is hereby ORDERED, DECREED, and DECLARED that judgment debtors Arthur Deutsch and Julius Walker are fully indemnified by City of Birmingham against the judgments against them.

In accordance with the accompanying memorandum opinion, which is based on the undisputed facts and the principles of law therein discussed, and pursuant to the garnishment and ancillary collection proceedings instituted against City of Birmingham by the two judgment creditors, as well as pursuant to the prior orders of the court, it is hereby ORDERED that plaintiff Valinda Oladeinde shall have and recover of indemnitor, City of Birmingham, the sum of $194,339.60, arrived at by adding interest at the appropriate annual rate or rates, having accrued from the date of the separate judgments in favor of Oladeinde and against indemnitee defendants,

Arthur Deutcsh and Julius Walker, until the date of this order.[1]
Plaintiff, Patricia Fields, shall have and recover of indemnitor,
City of Birmingham, the sum of $130,338.85, arrived at by adding
interest at the appropriate annual rate or rates, having accrued
from the date of the judgment in favor of Fields and against
indemnitee defendant, Julius Walker, until the date of this order.[2]
City of Birmingham shall pay the said judgments today entered
against it directly to counsel for plaintiffs, who, upon receiving
the full amount of said judgments against City of Birmingham, shall
satisfy with the Clerk both the judgments against City of
Birmingham and the judgments against Arthur Deutcsh and Julius
Walker.

     This constitutes a final, appealable order, even though the
court has not yet ruled upon motions for sanctions and requests for
attorneys fees and expenses.  Those issues will be addressed only
after appellate consideration of the several pending appeals and of
the almost certain appeal from this order.

     To the extent there are taxable costs that have accrued since
the earlier assessment of costs, costs are taxed against City of
Birmingham.

     DONE this 22nd day of April, 1999.

                                    _Witt M. Acker_

                                    WILLIAM M. ACKER, JR.
                                    UNITED STATES DISTRICT JUDGE

_____

[1] This judgment amount reflects 5.413% simple interest over 288 days since
the entry of judgments in favor of Oladeinde.  To the sum total of judgments,
which together equaled $186,379.20, interest in the amount of $7,960.40 has been
added.

[2] This judgment amount reflects 5.413% simple interest over 288 days since
the entry of judgment in favor of Fields.  To the judgment of $125,000, interest
in the amount of $5,338.85 has been added.